[Civ. No. 7876. Second Appellate District, Division Two.—June 29, 1933.]

GEORGIA A. REA, Appellant, v. B. P. GLENN et al., Respondents.

I. Henry Harris and Patrick F. Kirby for Appellant.

Louis Luckel, Randall & Bartlett and Kenneth W. Kearney for Respondents.

PARKER, J., *pro tem.*—This is an appeal from a judgment in an action to recover money. Said judgment was against plaintiff and in favor of all defendants, adjudging that plaintiff recover nothing and awarding costs to each defendant.

Without further preliminary we launch off into the facts. Some argument is raised as to what were the real issues in the case and inasmuch as the findings are somewhat general there does seem room for argument. However, we may take appellant's contention in this connection as being sufficient for present purposes. The defendants were jointly engaged in the procurement of leases and in the development of certain unproven oil lands of the class generally designated as wildcat. A certain oil company known as Neame Oil Company had leased some 295 acres of land in Tulare County to parties named Haas and Jones. These lessees had entered

upon the lands and undertook the development thereof through sinking a well in the hope of discovering oil. After the well had been sunk some distance the defendants came upon the scene. They purchased the Haas-Jones interests and the Neame lease was transferred and assigned to defendants and a new deal inaugurated which embraced not only the original 295 acres but took in some 13,000 acres of leasehold. The specific plan seemed to be to proceed with the well then being bored and acquire sufficient other lease interests so that if the field proved a producer greater benefits might result to all concerned. In the original Neame lease and as it was assigned and re-executed there was provision for diligent development and a forfeiture clause. The latter, however, was not self-executing but required declaration of forfeiture with specifications and continuing default for thirty days after notice. As hereinbefore stated, when Haas and Jones sold and assigned to defendants there was a well being bored on the Neame Oil Company's property. The agreement between Haas-Jones and defendants provided for the continuation of this well and among other things the defendants agreed as follows: To pay Haas-Jones $1,000 each month until oil or gas in paying quantities shall be discovered by them in their drilling operations carried on pursuant to the drilling requirements of the Neame Oil Company lease or until such drilling operations shall be abandoned by reason of the encountering of formations, recognized by geologic experience as unfavorable to the production of oil and gas in paying quantities. Shortly after defendants took over the property the plaintiff and appellant herein presented to defendants an order in writing signed by Haas-Jones and reading as follows:

"Messrs. B. P. Glenn, V. Hitchcock and George H. Puntenney, copartners, doing business under the fictitious name of Lincoln Finance Company.

"Gentlemen: You will please pay to Mrs. Georgia A. Rea of Kingsburg, California, the sum of Six Thousand Six Hundred ($6600.00) Dollars out of any and all moneys to become due and payable to us from you pursuant to and in accordance with that certain agreement, bearing date the 23rd day of July, 1926, made by and between yourselves as parties of the first part, and the undersigned as parties of the second part, which agreement relates to matters pertaining to the

development of the Neame Oil Company lease, and other oil and gas leases. This order is made subject to a prior order from us in favor of the Neame Oil Company bearing date the 23rd day of July, 1926. Upon the making of payments pursuant to this order you will charge the same to our account under said contract. Dated and signed this 11th day of August, 1926.

"ROBERT C. HAAS,
"C. C. JONES."

The defendants accepted the order as indicated by the following indorsement thereon:

"The foregoing order is hereby accepted this 30th day of August, 1926.

"LINCOLN FINANCE COMPANY,
"A. G. WESSLING, Pres.
"By B. P. GLENN, Sec'y."

Incidentally it may be noted that defendants were doing business under the style of Lincoln Finance Company and no question is presented on this.

It is conceded that payments were made for the month of October, 1926, namely, $1,000. ▮▮▮ The action is to recover from defendants the balance of $5,600. The court below found nothing was owing by defendants and their liability under the acceptance had been fully discharged. The main point urged by appellant is that the evidence does not support this finding. The theory of the case at the trial was that there was an abandonment of operations owing to the geological formation having become such as to render futile further boring. Appellant assumes that the court below did so find and that this was the basis of the ultimate finding of nonliability. Inasmuch as appellant seems to concede that if there was an abandonment of operations the judgment must be affirmed we will decline to go into the technique of procedure relative to implied findings and go direct to this one question. It is conceded that there is sufficient evidence to establish the fact that in October of 1926 the defendants did encounter in the well formations recognized by geological experience as unfavorable to the production of oil and gas in paying quantities. The fact is thus established that defendants did reach a point where further boring could, within the terms of the contract, be abandoned. Whatever

the effect of this may be it was a fact to be considered in determining whether the operations were abandoned.

There is in the record positive testimony that on October 25, 1926, all operations at the well ceased, that the defendants were without funds and that the only thing thereafter done was the cleaning out of the well and removing the tools and such matter as may have accumulated or been lost in the hole. The positive testimony of defendants is that at the time named, October 25, 1926, the operations were entirely abandoned and the record fails to disclose anything by way of overt act in or about the premises to controvert this testimony. However, argues appellant, there were certain acts of the defendants that negative any notion of abandonment. This contention might be summarily disposed of by holding that this latter evidence simply created a conflict in the evidence. Yet we prefer to dispose of the point on its merits.

The sum total of the claim of appellant is that after the date of the claimed abandonment the defendants did attempt to interest third parties in the venture and to dispose of their holdings not only in the lands which included the well but also in the 13,000 acres that went to embrace their holdings in the field. It was manifestly an attempt to salvage what they could or to reimburse themselves in the adventure. Such conduct would not completely negative the claim of abandonment. And here we may consider the essentials of an abandonment under the facts of the instant case. The question of abandoning operations is somewhat different from the question of an abandonment of property in its most general sense. All of the law on the general subject of abandonment has reference to a complete abandonment rather than the cessation of any particular line of endeavor. Here it is fair to construe the phrase of the contract "abandon operations" as simply meaning to cease operations with no intention of renewing the same. It did not mean that defendants should abandon the entire project or that they should withdraw entirely from the field. All of the drilling operations specified were in this one well started by Haas and Jones. Their operations could be abandoned and the interests of defendants in the field remain otherwise unaffected. There was evidence that in January of 1927 the defendants negotiated with Haas and Jones, looking toward a forbearance of forfeiture and extension of privilege

to resume boring. These negotiations were conditioned upon defendants' securing new parties to take the well. This was evidence as much in favor of an abandonment of operations by defendants as it was to the contrary. Taken in its entirety the evidence supports the finding of an abandonment of operations on the well in question. The original obligees, Haas and Jones, recognized the abandonment or at least the record bears that construction of the situation. Haas and Jones, Neame Oil Company and defendants by and through various agreements were co-operating in the lease interests acquired on the larger acreage and working together toward the proving of the entire field. The negotiations and agreements of the parties after the cessation of operations were general and affected the entire holdings rather than indicating retention of the well and intent to continue the boring.

The court, as indicated, found against appellant on every issue and while the only evidence attacked as insufficient involves the abandonment, so termed, there would be other findings ample to sustain the judgment. The question of abandonment, whether it be a complete abandonment or a cessation of operations with intention of never resuming, is always one of act and intent. Every fact and circumstance is to be considered and given its proper weight. And we think this is exactly what the trial court did and in our opinion it reached a conclusion finding ample support in the evidence. Findings of ultimate facts are binding upon appeal, not only when there is a direct conflict regarding the probative facts, but when those facts are fairly susceptible to opposing inferences. (*Northwestern P. C. Co.* v. *Atlantic P. C. Co.*, 174 Cal. 312 [163 Pac. 47].)

This being the only point urged, the judgment is affirmed.

Works, P. J., and Craig, J., concurred.